**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
ABILENE DIVISION**

| | | |
|---|---|---|
| **ISMAEL LOREDO,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 1:04-CV-0052-C |
| | § | ECF |
| | § | Referred to the U.S. Magistrate Judge |
| **JO ANNE B. BARNHART,** | § | |
| **Commissioner of Social Security,** | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**

**THIS MATTER** is before the court upon Plaintiff's complaint filed March 2, 2004, for judicial review of the administrative decision of the Commissioner of Social Security denying Plaintiff's applications for a period of disability and disability insurance benefits and for supplemental security income benefits under Title II and Title XVI of the Social Security Act. Plaintiff filed a brief in support of his complaint[1] on May 3, 2005,[2] and Defendant filed her brief on May 27, 2005. The United States District Judge, pursuant to 28 U.S.C. § 636(b), referred this matter to the United States Magistrate Judge for report and recommendation, proposed findings of fact and conclusions of law, and a proposed judgment. This court, having considered the pleadings, the

---

[1] Despite the instructions of the court indicating that Social Security cases are treated as appellate in nature, Plaintiff filed a Motion for Summary Judgment in this case. However, in accordance with the Scheduling Order in this case, Plaintiff's brief in support of his summary judgment and his summary judgment motion were considered as his brief in this matter.

[2] Plaintiff filed essentially identical Motions for Summary Judgment and briefs in support of his motion on May 2 and May 3, 2005. The court considered these as a single brief in support of his complaint seeking judicial review of the Commissioner's decision.

briefs, and the administrative record, recommends that the United States District Judge affirm the Commissioner's decision and dismiss the complaint with prejudice.

## I. STATEMENT OF THE CASE

Plaintiff filed applications for a period of disability and disability insurance benefits and for supplemental security income benefits on February 26, 2002, alleging disability beginning January 17, 2002. Tr. 14, 281-83. Plaintiff's applications were denied initially and upon reconsideration. Tr. 284-87, 290-96. Plaintiff filed a Request for Hearing by Administrative Law Judge on October 17, 2002, and this matter came for hearing before the Administrative Law Judge ("ALJ") on April 2, 2003. Tr. 29, 32-54. Plaintiff, represented by a non-attorney and through an interpreter, testified in his own behalf. Tr. 35-43. Dr. George W. Weilepp, a medical expert ("ME") and Michael Driscoll, a vocational expert ("VE"), appeared and testified as well. Tr. 14, 43-53. The ALJ issued a decision unfavorable to Plaintiff on May 27, 2003. Tr. 11-21.

In his opinion the ALJ noted that the specific issue was whether Plaintiff was under a disability within the meaning of the Social Security Act. The ALJ noted that in June 2000 Plaintiff had filed a prior set of concurrent disability applications, alleging disability since January 19, 1999, which were denied. Tr. 14-15. He noted that Plaintiff did not request Appeals Council review of the previous ALJ decision denying those applications. Tr. 15. Plaintiff filed the instant applications a month later. *Id*. The ALJ declined to reopen the prior applications in light of his ultimate decision in this case. *Id*. Therefore, the alleged onset date of the instant applications was set at January 17, 2002, a day after the ALJ denied his previous applications. *Id*.

The ALJ found that Plaintiff met the disability insured status requirements on January 17, 2002, through the date of his decision and that Plaintiff had not engaged in substantial gainful activity at any time since January 17, 2002. Tr. 19. He found that Plaintiff has "severe" impairments, including degenerative disk disease in the cervical spine, with right C6 radiculopathy,

status-post C5-7 discectomy/fusion, and mild right carpel tunnel syndrome. *Id*. The ALJ found that Plaintiff's depression was not a "severe" mental impairment, citing *Stone v. Heckler*, 752 F.2d 1099 (5th Cir. 1998) and 20 C.F.R. §§ 404.1521 and 416.921. Tr. 20. He further found that Plaintiff's severe impairments, singularly or in combination, were not severe enough to meet or equal in severity any impairments listed in the Listing of Impairments, 20 C.F.R. Part 404, Subpt. P, App. 1. *Id.*

The ALJ noted that Plaintiff reported that he injured his neck in an on-the-job accident on January 19, 1999, and underwent a C5-7 discectomy/fusion on October 7, 1999. Tr. 15. He noted that Plaintiff was treated by various physicians, including Dr. Gary L. Heath, a pain management specialist. *Id*. The ALJ noted that Plaintiff had relied on chiropractic therapy. *Id*.

The ALJ found that Plaintiff had medically determinable impairments capable of producing the subjective complaints expressed. *Id*. The ALJ indicated that he considered the intensity, persistence, and adverse effects of the subjective symptomology in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and Social Security Ruling 96-7p (July 2, 1996)("SSR 96-7p"). *Id*. The ALJ discussed Plaintiff's testimony of pain in his neck and back, numbness in his right hand, and aggravation of pain if he sits or stands in one position for more than 20 minutes. *Id*. He noted Plaintiff's testimony of trying to walk for exercise and assist with household chores and yardwork, which could not be completed because of his pain. *Id*. He also noted Plaintiff's testimony of experiencing only partial relief from his pain medications for short periods. *Id*.

The ALJ noted that he had evaluated Plaintiff's testimony and other statements regarding his daily activities, symptoms, and restrictions. Tr. 16. He also indicated that he had considered other relevant factors, including but not limited to Plaintiff's daily activities; the location, duration, frequency, and intensity of the subjective complaints; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of the Plaintiff's medications; the prescribed treatment; and

any other palliative measures used. *Id.* The ALJ also indicated that he recognized that Plaintiff may experience pain or discomfort at time of overexertion but noted that even a moderate level of pain is not, by itself, incompatible with the performance of all types of sustained work activity. *Id.* He also noted that Plaintiff had presented several statements from Scott Wofford and Cole Mitchell, chiropractors, who have treated him since 1999 and who opined that he was disabled. *Id.* The ALJ noted that he was not bound to accept even a treating physician's conclusion as to functional capacity or disability *vel non*, particularly when such opinion is not supported by detailed clinical diagnostic evidence. *Id.* The ALJ noted that there was nothing to suggest that the chiropractors were aware of the entire body of medical evidence and that the assessment prepared by Dr. Wofford suggested limits even beyond those alleged by Plaintiff (i.e., unable to sit or stand for even one minute of an 8-hour workday). *Id.* The ALJ found that Plaintiff's subjective complaints were, by implication, exaggerated. Tr. 17. He nevertheless found that Plaintiff does experience a certain amount of constant pain which has compromised his ability to engage in work-related mental activities and therefore found that Plaintiff could not understand, remember, or carry out more than simple instructions. Tr. 18.

The ALJ noted that Plaintiff lacks elemental literacy and arithmetic skills, and his previous job as a front-end loader operator was at the lower level of semi-skilled work at the medium exertional level. Tr. 18. The ALJ found that Plaintiff could not return to his past relevant work as a front-end loader operator. Tr. 20. He noted that Plaintiff was considered a "younger individual" with a marginal (3rd grade) formal education. 20 C.F.R. §§ 416.963, 416.964; Tr 18.

The ALJ found that Plaintiff retained the RFC for the sustained performance of a limited range of light work activities, except that he cannot stoop, balance, crouch, crawl, kneel, or climb more than occasionally; he cannot sit more than 6 hours out of an 8-hour workday or for more than 90 minutes at one time without the opportunity to stand and move around; he cannot climb scaffolds,

ladders, or ropes; he cannot walk/stand for more than 60 minutes at one time without the opportunity to rest; he cannot stand/walk more than 4 hours per workday; he cannot work above shoulder level with his hands and arms more than occasionally; he cannot push, pull, or reach repetitiously with his dominant right upper extremity; and he cannot work at unguarded heights or near unguarded hazardous mechanical equipment. Tr. 20. The ALJ also found that Plaintiff's non-severe mental impairment did not have more than a minimal effect on his ability to perform either his activities of daily life or basic mental activities. Tr. 18.

The ALJ found that Plaintiff has no transferable skills. *Id*. He noted that if Plaintiff could perform a full range of light activities, application of the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpt. P, App. 2 ("the Grids") would direct a finding of not disabled. *Id*. However, having found that Plaintiff could not perform the full range of light work, the ALJ turned to the testimony of the VE in determining whether Plaintiff was capable of making a vocational adjustment to other work despite his severe impairments. Tr. 19, 49-53. The ALJ relied upon the testimony of the VE who indicated that a hypothetical person of Plaintiff's age, with Plaintiff's RFC and vocational history, could perform work which exists in the national economy, including the jobs of small product assembler, with 8,000 jobs in Texas and 266,000 nationally; and cleaner/polisher, with 8,900 jobs in Texas and 166,000 jobs nationally. *Id*. The ALJ, therefore, concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time through the date of his decision. Tr. 19, 21.

Plaintiff submitted a Request for Review of Hearing Decision/Order on June 10, 2003. Tr. 10. The Appeals Council issued its opinion on January 2, 2004, indicating that although it had considered the contentions raised in Plaintiff's Request for Review and additional evidence, it nevertheless concluded that there was no basis for changing the ALJ's decision and denied Plaintiff's request. Tr. 6-9. On May 7, 2004, the Appeals Council advised that although it had

received more evidence, it found no reason to reopen and change the decision. Tr. 4-5. The ALJ's decision, therefore, became the final decision of the Commissioner.

On March 2, 2004, Plaintiff commenced this action which seeks judicial review of the Commissioner's decision that Plaintiff was not disabled.

## II.   STANDARD OF REVIEW

An individual may obtain a review of the final decision of the Commissioner by a United States District Court. 42 U.S.C. § 405(g). The court's review of a denial of disability benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the proper legal standards. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002)(citing *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000)). Substantial evidence "is more than a mere scintilla and less than a preponderance" and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Masterson v. Barnhart*, 309 F.3d 267, 272 (5th Cir. 2002); *Watson v. Barnhart*, 288 F.3d 212, 215 (5th Cir. 2002). The court will not re-weigh the evidence, try the questions *de novo*, or substitute its judgment for the Commissioner's, even if the court believes that the evidence weighs against the Commissioner's decision. *Masterson,* 309 F.3d at 272. "[C]onflicts in the evidence are for the Commissioner and not the courts to resolve." *Id.* (quoting *Newton v. Apfel,* 209 F.3d 448, 452 (5th Cir. 2000)).

In order to qualify for disability insurance benefits or supplemental security income, a claimant has the burden of proving that he or she has a medically determinable physical or mental impairment lasting at least 12 months that prevents the claimant from engaging in substantial gainful activity. Substantial gainful activity is defined as work activity involving significant physical or mental abilities for pay or profit. *Newton,* 209 F.3d at 452; *see* 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1527(a)(1).

The Commissioner follows a five-step process for determining whether a claimant is disabled within the meaning of the Social Security Act. 20 C.F.R. § 404.1520; *Masterson*, 309 F.3d at 271; *Newton*, 209 F.3d at 453. In this case, the ALJ found at step 5 that Plaintiff was not disabled because he retained the ability to perform work in the national economy. Tr. 19, 21.

### III.   DISCUSSION

Plaintiff claims that the ALJ's decision is not supported by substantial evidence because the ALJ failed to appropriately consider and evaluate the opinion of Plaintiff's treating doctors and sources in assessing Plaintiff's limitations and making his RFC determination.

**A.   Whether the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.**

Plaintiff alleges that the ALJ erred in determining his RFC and ability to maintain employment. The ultimate issue is whether the ALJ's decision is supported by substantial evidence. The court, therefore, must review the record to determine whether it "yields such evidence as would allow a reasonable mind to accept the conclusion reached by the ALJ." *Loza v. Apfel,* 219 F.3d 378, 393 (5th Cir. 2000).

Plaintiff argues that the ALJ erred because his limitations did not reflect his finding that Plaintiff's allegations regarding his subjective complaints were credible. Plaintiff argues that the ALJ's RFC finding is not consistent with Plaintiff's testimony. Plaintiff mistakenly states that the ALJ found that Plaintiff suffered from a medically determinable impairment which produced the subjective complaints he described and that he further found that Plaintiff's subjective complaints were credible.

Pursuant to SSR 96-7p, the adjudicator is required to go through a two-step process in evaluating a claimant's symptoms. The ALJ must first:

> consider whether there is an underlying medically determinable physical or mental impairment . . . that could reasonably be expected to produce the individual's pain

>or other symptoms. . . . Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. The record demonstrates that the ALJ found that Plaintiff had medically determinable impairments *capable* of producing the subjective complaints expressed. Tr. 15. Although Plaintiff argues that the ALJ found in his decision that Plaintiff suffered from a medically determinable impairment "that produced the subjective complaints he described," the record indicates that the ALJ made the credibility finding described by SSR 96-7p. P. Brief at 8. The record further demonstrates that in his decision, the ALJ indicated that he considered the intensity, persistence, and adverse effects of the subjective symptomology in accordance with 20 C.F.R. §§ 404.1529 and 416.929 and SSR 96-7p. Tr. 15. The ALJ specifically discussed Plaintiff's testimony regarding his pain, the numbness in his hands, and the fact that sitting or standing for more than 20 minutes aggravates his pain. *Id*. He also discussed Plaintiff's reports and testimony regarding his activities and the efficacy and side effects of the pain medication he was prescribed. *Id*. He discussed each of the factors set forth in SSR 96-7p regarding Plaintiff's subjective allegations. Tr. 16. The ALJ also discussed the findings and opinions of Plaintiff's various treatment providers. He ultimately found that Plaintiff's subjective complaints were, by implication, exaggerated. Tr. 17. He did not find that Plaintiff's testimony was entirely credible. The ALJ discussed the inconsistencies between Plaintiff's allegations, the evidence in the record, and the opinions of the various physicians and treatment providers. He found that Plaintiff's subjective allegations were credible to an extent and found that the constant pain experienced by Plaintiff compromised his ability to engage in work-related mental

activities. Tr. 18. The ALJ accommodated this limitation by finding that Plaintiff could not understand, remember, or carry out more than simple instructions. *Id*.

Questions of credibility are the responsibility of the ALJ to resolve. *Masterson*, 309 F.3d at 272. The record demonstrates that the ALJ complied with the requirements of SSR 96-7p in assessing Plaintiff's pain and in making his credibility determination. Moreover, the record demonstrates that the ALJ appropriately discussed the reasons underlying the credibility determination, including the inconsistency between Plaintiff's testimony and allegations and the medical evidence. The credibility determination is supported by substantial evidence in the record. The ALJ did not err in evaluating Plaintiff's credibility, nor did he err by failing to incorporate those subjective limitations which he did not accept into his RFC determination.

Plaintiff next argues that the ALJ erred in evaluating the opinion of Dr. Wofford, his treating doctor. Plaintiff argues that the ALJ inappropriately failed to give Dr. Wofford's opinion controlling weight and failed to analyze the opinion of Dr. Wofford using the detailed criteria set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) and *Newton*, 209 F.3d at 453.

The opinion of a treating physician who is familiar with the claimant's impairments, treatments, and responses should be accorded great weight in determining disability. A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2). On the other hand, "[g]ood cause may permit an ALJ to discount the weight of a treating physician relative to other experts where the treating physician's evidence is conclusory, is unsupported by medically acceptable clinical, laboratory, or diagnostic techniques, or is otherwise unsupported by the evidence." *Newton*, 209 F.3d at 456.

Unless the Commissioner gives a treating source's opinion controlling weight, the Commissioner will consider six factors in deciding the weight to give to any medical opinion. 20 CFR § 404.1527(d). The Fifth Circuit held in *Newton* that "an ALJ is required to consider each of the [six] factors before declining to give any weight to the opinions of the claimant's treating specialist." *Newton,* 209 F.3d at 456. Thus, the ALJ is required to consider the six factors if he does not give the opinion of a treating specialist any weight. This requirement applies only to medical opinions and does not apply to conclusory statements that a claimant is disabled. *Frank v. Barnhart*, 326 F.3d 618, 620 (5th Cir. 2003). First, "[a]mong the opinions by treating doctors that have no special significance are determinations that an applicant is 'disabled' or 'unable to work.' These determinations are legal conclusions that the regulation describes as 'reserved to the Commissioner.'" *Id.* (citing 20 C.F.R. § 404.1527(e)(1)). Thus, the ALJ was not required to apply the six factor analysis discussed in *Newton* to any conclusory statement about disability or inability to work, including statements by Dr. Wofford or Dr. Mitchell that Plaintiff is disabled or unable to work, nor was he required to give such statements special weight. Tr. 234, 294, 320, 330. Moreover, Dr. Wofford was not a "treating specialist" or "treating physician" whose opinion is entitled to the weight discussed in *Newton* and in 20 C.F.R. § 404.1527(d)(e). Rather, Dr. Wofford was a chiropractor, whose opinion as a "medical source" rather than a treating physician, is accorded less weight under the applicable regulations. *See* 20 C.F.R. § 404.1513(e); *Griego v. Sullivan*, 940 F.2d 942, 945 (5th Cir. 1991). Plaintiff argues that the ALJ improperly rejected the medical assessment of ability to do work-related activities form which Dr. Wofford completed as part of his worker's compensation evaluation. The decision of the ALJ indicates that he had, in fact, considered this assessment and noted that Dr. Wofford's opinion as to Plaintiff's limitations was inconsistent with Plaintiff's own testimony (unable to sit or stand for even one minute of an 8-hour day). Tr. 16, 38 (Plaintiff testified that he can sit for 20 minutes before he has to move), 199

(opining that Plaintiff cannot sit or stand at all).  Moreover, the assessment was inconsistent with the treatment notes of Dr. Mitchell, Plaintiff's other chiropractor.  *See* Tr. 197 (noting Plaintiff's report of pain with *long-term* sitting and standing).   "The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."  *Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991)(citing *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987)). Clearly, the ALJ appropriately considered the opinion of this medical source and also indicated his reason for rejecting this opinion.  The ALJ was not required to perform the analysis described in *Newton* and in 20 C.F.R. § 404.1527(d)(2) and 416.927(d) because Dr. Wofford, as a chiropractor, is not a treating physician as defined by the regulations.

Plaintiff argues that the ALJ erred by failing to include limitations on the use of the right hand, drowsiness and nausea caused by his pain medication.  An evaluation was performed by Dr. Rexford K. Anderson, Jr., a neurologist, on January 16, 2001. Tr. 254-55.  Plaintiff, through his wife, reported that he has severe pain in his right arm, and he has pain in his right leg and is unable to move it at times.  Tr. 254.  Plaintiff also apparently reported that he does not have much strength in the right arm.  *Id*.  Upon examination, Dr. Anderson noted that pinprick testing indicated a numb sensation over the right arm, and his impression was recurrent cervical HNP on the right. He further indicated that a right thoracic outlet syndrome might be considered.  Tr. 255.

Dr. Paul W. McDonough, an orthopedic surgeon, examined Plaintiff on February 21, 2002. Tr. 93.  Dr. McDonough noted Plaintiff's complaints of residual neck pain, bilateral arm pain, and diffuse hand numbness. *Id*.  He noted that upon examination, Plaintiff displayed poor effort with regard to his bilateral upper extremities, as opposed to any focal weakness, with slightly abnormal sensation on his digits bilaterally. *Id*. Dr. McDonough opined that there was no evidence of any

surgical lesion and indicated that Plaintiff should continue non-operative treatment, including physical therapy and pain management. Tr. 94.

Dr. Mark S. Maxwell also conducted a neurosurgical evaluation of Plaintiff on May 20, 1999. Tr. 261-62. He noted some give away weakness throughout the right side on examination which, when focused, appeared to be symmetrical on the left and intact. Tr. 262. He also noted that pinprick sensation and reflexes were normal. *Id*. Dr. Maxwell's impression was severe cervical strain with deconditioning. *Id*. He recommended a muscle relaxer, Soma instead of Skelaxin, and physical therapy. *Id*.

In a letter dated April 10, 2001, Dr. Albert M. Kincheloe indicated that he was Plaintiff's treating physician and opined that Plaintiff was "unable to work and unemployable." Tr. 112.

Records from Dr. Heath indicate that Plaintiff underwent cervical epidural steroid injections on April 20, 2001, which did not provide relief. Tr. 165. He was prescribed Percocet for breakthrough pain. *Id*. Plaintiff complained of nausea and diarrhea from his medication, and he was prescribed methadone for nighttime and OxyIR for breakthrough pain. Tr. 164. On June 14, 2001, Plaintiff was noted to be tolerating the methodone. Tr. 163. The methadone was changed to twice daily to afford him better relief during the day. *Id.* A progress note dated August 6, 2001, indicates Plaintiff's report of sedation with the medication with very little pain relief. Tr. 162. His medication was therefore changed to MS Contin. *Id*. A subsequent progress note from September 11, 2001, indicates that Plaintiff experienced improvement of his pain with the MS Contin, with no side effects, and was tolerating the medication well. Tr. 160. The dosage of MS Contin was increased, but Plaintiff did not fill his prescription and another one was issued. Tr. 159. At his next visit, Plaintiff reported that the MS Contin was helping slightly and denied any side effects other than mild sedation. Tr. 158. The dosage was increased, but at his next appointment, Plaintiff reported increased sedation. Tr. 157-58. Plaintiff's medication was changed to OxyContin

because of the side effects. Tr. 157. On October 26, 2001, Plaintiff was noted to have no side effects and the OxyContin dosage was increased. Tr. 156. The next progress note, dated November 9, 2001, indicates that Plaintiff's side effects were resolved, and the dosage was again increased. Tr. 155. A week later Plaintiff was again noted to be tolerating the medication, and Soma was added for muscle spasms. Tr. 154. The OxyContin was increased but was later decreased after Plaintiff reported nightmares. Tr. 152-53. On January 14, 2002, Dr. Heath noted Plaintiff's report of increased heart rate and nightmares, and the OxyContin was decreased. Tr. 150. By February 11, 2002, Dr. Heath noted that Plaintiff's side effects had definitely improved, although he continued to experience pain. Tr. 149. Plaintiff reported some itching on April 22, 2002, and the OxyContin was decreased. Tr. 148. A progress note from Dr. Heath dated August 15, 2002, indicates that Plaintiff had been on Flexeril, which he was unable to tolerate because it made him too sleepy. Tr. 146. He was therefore prescribed Percocet, Skelaxin, and Neurontin. *Id.* A September 12, 2002, progress note indicates Plaintiff's report of pain, and his Skelaxin was increased. Tr. 191. His medications were continued and Celebrex was added on December 5, 2002. Tr. 190. On January 22, 2003, Dr. Heath noted that Plaintiff had decreased sensation in his hands and forearms and indicated that further studies would be appropriate. Tr. 188. Plaintiff saw Dr. Heath on April 14, 2003, complaining of numbness and tingling in his hands intermittently and pain in the right upper extremity. Tr. 267. Plaintiff also reported nausea with his pain. *Id.* Dr. Heath prescribed a single-point cane for ambulation, adjusted the OxyContin, and prescribed Phenergan for nausea. *Id.* On May 5, 2003, Plaintiff was prescribed a dorsal column stimulator. Tr. 268. However, Plaintiff did not complete the two-week trial and refused to continue, and the stimulator was discontinued. Tr. 270, 272. A June 26, 2003, progress note indicates Plaintiff's report of significant pain, some problems with sleep because of the pain, and some occasional nausea with

his medications. Tr. 274. Plaintiff's OxyContin was adjusted, and Phenergan and Remeron were prescribed for nausea as needed. *Id.*

Plaintiff was referred to Dr. Paul C. Harris, a neurologist. Tr. 181. Dr. Harris noted Plaintiff's report of neck pain with discomfort to the shoulders and occasional numbness and tingling in the arms, worse on the right. *Id.* Dr. Harris' impression was cervical radiculopathy or possible brachial plexopathy on the right. Tr. 182.

The ALJ incorporated limitations to reflect Plaintiff's problems with his dominant right upper extremity and neck, including not working above the shoulder level more than occasionally and no pushing, pulling, or reaching repetitiously with the right upper extremity. Tr. 19. The ALJ also incorporated a limitation against working at unguarded heights or near unguarded hazardous mechanical equipment. *Id.* The ME, an orthopedic surgeon, testified that Plaintiff's severe cervical impairment had reduced his functional capacity to a limited range of light work. Tr. 17, 46. Moreover, the ME specifically indicated that he had considered Plaintiff's arm symptomology in formulating his opinion. Tr. 46. The limitations incorporated into the RFC finding are consistent with the medical evidence indicating Plaintiff's reports of neck pain and numbness, tingling, and pain in his dominant extremity and are supported by substantial evidence in the record including the testimony of the ME. *Id.* Moreover, although Plaintiff argues that the ALJ failed to incorporate a limitation based on the side effects of his medication, specifically sleepiness, the record demonstrates that Plaintiff primarily reported sleepiness prior to his alleged onset date, and his medications were adjusted to deal with the side effects. Tr. 152-167. Plaintiff complained of occasional nausea because of pain and his medications. However, nothing in the record indicates that his occasional nausea was of such severity as to otherwise impose limitations on his functions. The ALJ discussed Plaintiff's subjective symptoms, complaints, and the evidence in the medical record in his opinion, and he appropriately incorporated those limitations that he accepted into the

hypothetical question presented to the VE. The ALJ is not required to incorporate limitations into the hypothetical questions presented to the VE that he did not find to be supported in the record. *See Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988). The hypothetical presented to the VE need only reasonably incorporate the limitations accepted by the ALJ. *See Bowling v. Shalala*, 36 F.3d 431, 435-36 (no reversible error where the hypothetical presented reasonably incorporated the limitations accepted by the ALJ and claimant's representative had the opportunity to present questions incorporating additional limitations).

Plaintiff argues that the ALJ also failed to indicate the weight given to his physical therapist ("PT") in his opinion. The record indicates that Plaintiff was evaluated by a PT on May 2, 2001. Tr. 108-10. Plaintiff had also apparently been evaluated by an occupational therapist ("OT") in 1999. Tr. 256. The PT performed a functional capacity evaluation which indicated that Plaintiff could work four hours per day performing work at the light exertional level. Tr. 110. The OT indicated that Plaintiff had exerted some submaximal effort and therefore recommended that he be placed in a rehabilitation program on a trial basis only. Tr. 257. The OT opined that Plaintiff could work full-time at the light-medium exertional level. Tr. 260. A PT is, of course, not a treating physician or specialist as described by the regulations. 20 C.F.R. § 404.1513(e). Moreover, the PT noted that the results may indicate a false negative and that Plaintiff passed only 28 of 63 validity criteria, exhibited overt symptom/disability exaggeration, and exhibited very poor effort or voluntary submaximal effort not necessarily related to pain, impairment, or disability. Tr. 108-09. The PT further opined that "[t]he combination of overt symptom/disability exaggeration, non organic signs and a significant number of failed validity criteria are thought to represent a conscious effort to demonstrate a greater level of pain and disability than are actually present and conscious malingering should be considered." Tr. 109. In addition, the PT noted that Plaintiff demonstrated other unusual behavior and made several references to his pain being a 5 while speaking in Spanish

to his wife, yet would change it to an 8 or 9 of 10 when further questioned. *Id*. The opinion of the PT demonstrates that the validity of the test results was highly suspect; it further supports the ALJ's finding that Plaintiff's subjective complaints were exaggerated and also supports his negative credibility finding. Tr. 17. The task of weighing the evidence is the province of the ALJ. *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001). The relative weight to be given these pieces of evidence is within the ALJ's discretion. *Id.* The ALJ properly exercised his responsibility as factfinder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. *Muse*, 925 F.2d at 790. I find that the ALJ did not err by failing to specifically discuss the findings of the PT, particularly since the PT indicated the questionable validity of the test results.

I find that the ALJ appropriately considered the evidence as a whole in making his RFC assessment. The ALJ incorporated those limitations he accepted which were supported by substantial evidence in the record into his RFC finding and into the hypothetical questions posed to the VE. The ALJ also applied the proper legal standards in evaluating the opinions of the various treating sources and in evaluating Plaintiff's credibility. The ALJ's decision is supported by substantial evidence.

## IV.   CONCLUSION

Based upon the foregoing discussion of the issues, the evidence, and the law, this court recommends that the United States District Judge affirm the Commissioner's decision and dismiss the Plaintiff's complaint with prejudice.

The United States District Clerk shall serve a true copy of these findings, conclusions, and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1) and Rule 4 of Miscellaneous Order No. 6, For the Northern District of Texas, any party who desires to object to these findings, conclusions, and recommendation must serve and file written objections

within 11 days after being served with a copy. A party filing objections must specifically identify those findings, conclusions, or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory, or general objections. A party's failure to file such written objections to these proposed findings, conclusions, and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 472 (1985). Additionally, any failure to file written objections to the proposed findings, conclusions, and recommendation within 11 days after being served with a copy shall bar the aggrieved party from appealing the factual findings and legal conclusions of the United States Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

DATED this 28th day of February, 2006.

_____
**PHILIP R. LANE**
**UNITED STATES MAGISTRATE JUDGE**